SIMS et al. v. PUBLIC SERVICE COMMISSION et al.

No. 7377.   Decided May 9, 1950.   (218 P. 2d 267.)

See 60 C. J. S., Motor Vehicles, sec. 90.

*Pugsley, Hayes & Rampton,* Salt Lake City, for plaintiffs.

*Clinton D. Vernon,* Atty. Gen., *Mark K. Boyle,* Asst. Atty. Gen., *Franklin Riter,* Salt Lake City, for defendant.

WADE, Justice.

Certiorari to review an order of the Public Service Commission refusing to grant the plaintiffs a permit as a contract motor carrier to transport sugar in intrastate commerce between West Jordan, Utah, and Salt Lake City, Utah.

Plaintiffs who are a partnership doing business as the Salt Lake Transfer Company filed an application in November, 1947, with the Public Service Commission for a permit as a contract motor carrier to haul sugar for the Utah-Idaho Sugar Company between West Jordan and Salt Lake City, Utah. The Magna-Garfield Truck Line opposed the granting of this permit.

Plaintiffs had been hauling sugar for the Utah-Idaho Sugar Company between West Jordan and Salt Lake since

prior to 1939. The distance between Salt Lake and West Jordan is less than 15 miles. Prior to 1945 it was unnecessary to secure a permit from the Public Service Commission to transport property as a contract motor carrier of property if the point of origin of the shipment was within a radius of 15 miles of an incorporated city or town. In 1945, Sec. 76-5-25(a), U. C. A. 1943, was amended so that such transportation within a radius of 15 miles was no longer exempt from the provisions of Sec. 76-5-21, U. C. A. 1943, which requires a permit from the Public Service Commission to operate as a contract motor carrier.

Sec. 76-5-21 U. C. A. 1943, as amended by Laws of Utah 1945, Chap. 105, Sec. 3, provides that:

"It shall be unlawful for any contract motor carrier to operate as a carrier in intrastate commerce without having first obtained from the commission a permit therefor. The Commission shall grant on application to any applicant who was a contract motor carrier as defined by this act on the 1st day of January 1940, a permit to operate as a contract motor carrier on the same highways and to carry on the same type of motor service as he was on said date.

"The commission upon the filing of an application for a contract motor carrier's permit shall fix a time and place for hearing thereon and may give the same notice as provided in section 76-5-18 hereof. If, from all the testimony offered at said hearing, the commission shall determine that the highways over which the applicant desires to operate are not unduly burdened; that the granting of the application will not unduly interfere with the traveling public; and that the granting of the application will not be detrimental to the best interests of the people of the state of Utah and/or to the localities to be served, and if the existing transportation facilities do not provide adequate or reasonable service, the commission shall grant such permit."

After the hearing the commission found that the granting of plaintiff's application would detract from the business of existing carriers and would impair existing transportation service and that there was existing service already available in the area proposed to be served and that it would be detrminental to the best interests of the people in the area sought to be served and refused to grant the

application. It made no finding, as to the fact that plaintiffs had been providing the service sought in their application since prior to 1939.

Plaintiffs assign as error the commission's failure to make a finding that they had been a contract carrier transporting sugar for the Utah-Idaho Sugar Company between Salt Lake City and West Jordan since prior to 1939. They contend this is a material fact necessary in a determination of their rights under the "grandfather clause," i. e. that provision in the statute which provides that:

"* * * the Commission shall grant on application to any applicant who was a contract motor carrier as defined by this act on the 1st day of January 1940, a permit to operate as a contract motor carrier on the same highways and to carry on the same type of motor service as he was on said date."

In *Rowley* v. *Public Service Commission*, 112 Utah 116, 185 P. 2d 514, this court indicated that all contract carriers operating legally prior to 1940 would be entitled upon application to a permit to continue operating over the same highways and in the same manner as they had been doing. It is not contended herein that plaintiffs were operating illegally prior to 1945, since before that time it was not necessary to obtain a permit from the Public Service Commission to transport property within a radius of 15 miles from the point of origin. We said in the *Rowley* case that the reason for extending the "grandfather" rights to legally operating carriers under the 1945 act was because the Act had

"broadened the statute and brought within the provisions of the act every contract carrier operating within cities and towns and also casual contract carriers, which necessarily included a great many legally-operating carriers."

We also said on page 520 of 185 P. 2d:

"Many of these operators had substantial investments in the business and had acquired the privilege to operate with consent of the State. Considering the date used in the act, they had been operating

on the roads for at least five years, and it is reasonable to assume that there would be no necessity for them to establish the following facts: That their vehicles would not unduly burden the highways over which they had been operating; that their operations would not be detrimental to the best interests of the people of the state or the people of the localities served; that their trucks would not unduly interfere with the traveling public; and that their employment would not subject shippers to the hazards of dealing with irresponsible carriers. It is further reasonable to assume that their services were needed and desired. Had they not been, it is doubtful that the operations would have continued over a period of five years."

Although it was not necessary in the *Rowley* case to determine whether the commission on a hearing of an application for a permit by one who has been operating legally and who is claiming "grandfather" rights must determine from the evidence whether the granting of the application would unduly burden the highways or would be detrimental to the best interests of the people in the state or the localities to be served or that existing facilities are adequate, we did point out that those who could claim "grandfather" rights had already been using the roads and serving the localities when the legislation was passed, and it is reasonable to assume that the legislature had surveyed the conditions and determined that the then existing traffic was not detrimental to the interests of the public, but that further traffic without regulation and determination of necessity by the commission might become so. If the legislature intended that on the hearing these facts were to be determined whether the applicant had already operated as a contract carrier or was someone new who was seeking to enter the field, the provision that the

"Commission *shall* grant on application to any applicant who was a contract motor carrier as defined by this act on the 1st day of January 1940, a permit to operate as a contract motor carrier on the same highways and to carry on the same type of motor service as he was on said date," (emphasis ours)

can have little meaning. It could serve no purpose if it did not intend to give an advantage or right to one who has

already invested his capital in an enterprise which for a number of years it was legal to pursue without a permit from the commission. Had a permit been necessary and had it been obtained and then for some reason a new one sought for the same purposes, it could hardly be argued that these facts would have to be redetermined by the commission before the new permit would issue. It is reasonable to assume that the legislature, when it broadened the jurisdiction of the commission to regulate the hitherto exempt classes had in mind that those who had pursued their occupation as contract carriers legally under the exemption clauses were akin to those who were required to and did get a permit and therefore provided that the commission should issue such a permit upon application. The provision that the commission at the hearing must determine whether the highways would be unduly burdened, or would unduly interfere with the traveling public or would be detrimental to the best interests of the public or that there is already adequate service, applies only to newcomers who desire to enter the field.

In *McCarthy et al.* v. *Public Service Commission,* 94 Utah 304, 77 P. 2d 331, this court construed Chap. 65, Sec. 9 of Laws of Utah 1935, which granted "grandfather" rights to certain classes of contract carriers, to determine whether a hearing must be granted in all cases. That section then provided that:

"The commission upon the filing of an application for a contract motor carrier's permit by any other person than those referred to above (those entitled to grandfather rights) in this section shall fix a time and place for hearing thereon and shall give * * * notice as provided in section 6 hereof."

We then held that permits granted without a hearing were mere prima facie evidence of the right of the permittee to operate, but that opponents were not precluded from demanding and obtaining a hearing or the commission on its own motion might grant a hearing to other interested parties, to determine whether the applicant was

actually a contract carrier coming within the provisions of the act granting "grandfather" rights or that his operations did not exceed the limits of his permit. In that case we did not limit the questions to be determined on such hearing to whether the applicant was an actual contract carrier coming within the statute, but indicated that it might be on all the questions which the commission might determine in a new application. When the legislature amended this section in 1945, it must have had in mind this decision when it deleted the provision that a hearing after notice to interested parties need not be had where the applicant was a contract carrier claiming "grandfather" rights.

Although now a hearing upon notice to all interested parties must be held before a permit is issued, it does not follow that the questions to be determined by the commission are the same whether the applicant is a newcomer in the field or claims "grandfather" rights. In the first instance the commission must determine from the evidence the conditions specified in the second paragraph of the statute and in the second instance, it is reasonable to assume that the legislature by granting the rights has determined that as to them those conditions have been met. It is true, that in the *McCarthy* case, supra, there are some statements which might lead the reader to believe that the commission, on the hearing, would have to determine the same questions on the application of one who claimed "grandfather" rights as for one who applied as a newcomer. However, that problem was not before the court to be decided, and what we said therein was mere *dicta*. If one whose rights have already been granted, whether by the legislature or by the commission, would have to re-establish the existence of the additional conditions, such rights could be of little value and certainly would not be conducive to a practical establishment of a business which could best subserve the interests of the public. We therefore hold that the commission erred in not making a finding as to whether plaintiffs had been engaged as a contract motor carrier transporting

sugar for the Utah-Idaho Sugar Company between West Jordan and Salt Lake City, since prior to 1939. If the commission does so find, its other findings are immaterial and it should grant plaintiffs a permit.

Defendant argues that plaintiffs are not entitled to "grandfather" rights in any event, because they were operating illegally after the 1945 act went into effect and before they made their application in 1947, and therefore are in the same position as Rowley in *Rowley* v. *Public Service Commission,* supra. We cannot subscribe to this argument. Rowley's activities were illegal from their inception. He never obtained any "grandfather" rights. Plaintiffs herein were operating legally when the statute went into effect granting those rights. There is no provision in the act which as a matter of course takes these rights away for any subsequent act which might be unlawful, and we cannot read such a penalty into the act.

The order of the commission is hereby vacated and set aside.

PRATT, C. J., and WOLFE and LATIMER, JJ., concur.

McDONOUGH, J., not participating.